**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ZAHRA MOWAFY, | : | NO: 05-733 (KAJ) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NORAMCO OF DELAWARE, INC. | : | |
| and NORAMCO, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**COMPENDIUM TO
DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO STAY THIS
CIVIL ACTION PENDING SUBMISSION OF PLAINTIFF'S CLAIMS TO
DEFENDANTS' DISPUTE RESOLUTION PROGRAM**

DAVID E. BRAND (I.D.#201)
Prickett, Jones & Elliott, P.A.
1310 King Street
P. O. Box 1328
Wilmington, DE 19899
(302) 888-6514
Attorneys for Defendants

OF COUNSEL:

Larry L. Turner
Kenneth S. Knuckey
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19104
Tel: (215) 963-5000

DATE: April 25, 2006

# <u>TABLE OF CONTENTS</u>

**TAB**

*Commissariat A L'Energie Atomique v. Tottori Sanyo Elec. Co., Ltd.*,
 No. Civ.A. 03-484-KAJ, 2004 WL 1554382, *1 (D. Del. May 13, 2004) .................................1

*Honeywell Int'l, Inc. v. Audiovox Commc'n, Corp.*,
 No. Civ.A. 04-1337-KAJ, 2005 WL 2465898, at *2 (D. Del. May 18, 2005) ..........................2

*Kinnebrew v. Gulf Ins. Co.*,
 CA No. 3:94-CV-1517-R, 1994 WL 803508, at *2 (N.D. Tex. Nov. 28, 1994). ......................3

*Porter v. Cigna Ins. Co. of North Am.*,
 No. Civ. A.1:96-CV 765, 1997 WL 1068630, at *1 (N.D. Ga. March 26, 1997) ......................4

*Wetzel v. Baldwin Hardware Corp.*,
 No. Civ. 98-3257, 1999 WL 54563, at *3-4 (E.D. Pa. Jan. 29, 1999)........................................5

TAB 1

Not Reported in F.Supp.2d                                                                    **Page  1**
Not Reported in F.Supp.2d, 2004 WL 1554382 (D.Del.)
(Cite as: 2004 WL 1554382 (D.Del.))
н

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
**COMMISSARIAT A L'ENERGIE ATOMIQUE,**
**Plaintiff,**
v.
**DELL COMPUTER CORPORATION, et al.,**
**Defendants.**
**COMMISSARIAT A L'ENERGIE ATOMIQUE,**
**Plaintiff,**
v.
**TOTTORI SANYO ELECTRONIC CO., LTD.,**
**Defendant.**
**COMMISSARIAT A L'ENERGIE ATOMIQUE,**
**Plaintiff,**
v.
**BEST BUY CO. OF MINNESOTA, INC., et al.,**
**Defendants.**
**COMMISSARIAT A L'ENERGIE ATOMIQUE,**
**Plaintiff,**
v.
**FUJITSU LIMITED, et al., Defendants.**
**COMMISSARIAT A L'ENERGIE ATOMIQUE,**
**Plaintiff,**
v.
**TATUNG COMPANY, et al., Defendants.**
**No. Civ.A. 03-484-KAJ, Civ.A. 03-857-KAJ,**
**Civ.A. 03-931-KAJ, Civ.A. 03-1036-**
**KAJ, Civ.A. 04-99-KAJ.**

May 13, 2004.
Richard D. Kirk, Morris, James, Hitchens &
Williams, Wilmington, DE, for Plaintiffs and
Counter-Defendant.

Richard L. Horwitz, Potter Anderson & Corroon,
LLP, Wilmington, DE, for Defendants and Counter-
Claimant.

William J. Marsden, Jr., Fish & Richardson, P.C.,
Robert H. Richards, III, William J. Wade,
Richards, Layton & Finger, M. Duncan Grant,
Pepper Hamilton LLP, Josy W. Ingersoll, Young,
Conaway, Stargatt & Taylor, Jeffrey S. Goddess,
Rosenthal, Monhait, Gross & Goddess,
Wilmington, DE, for Defendants.

*MEMORANDUM ORDER*

JORDAN, J.

**I. INTRODUCTION**

**\*1** Presently before me are several Motions to
Consolidate filed by plaintiff, Commissariat a
l'Energie Atomique ("CEA"), in the following
patent infringement cases currently pending in this
court: *CEA v. Dell Computer Corp., et al.*, Civ.
No. 03-484-KAJ (D.Del. May 19, 2003) (Docket
Item ["D.I."] 89, D.I. 142); *CEA v. Tottori Sanyo
Electronic Co., Ltd.*, Civ. No. 03-857-KAJ (D.Del.
Sept. 4, 2003) (D.I.10, D.I.27); *CEA v. Best Buy
Co., et al.*, Civ. No. 03-931-KAJ (D.Del. Oct. 6,
2003) (D.I.48, D.I.81); and *CEA v. Fujitsu Ltd.*,
Civ. No. 03-1036-KAJ (D.Del. Nov. 13, 2003)
(D.I.14). Also before me are Motions to Stay the
Case filed by the defendants in Civ. No. 03-484-
KAJ (D.I.93); Civ. No. 03-931-KAJ (D.I.47); and
*CEA v. Tatung Co., et al.*, Civ. No. 04-099-KAJ
(D.Del. Feb. 13, 2004) (D.I.16). For the reasons
that follow, CEA's Motions to Consolidate will be
granted in part and denied in part and the
defendants' Motions to Stay the Case will be
granted.

**II. BACKGROUND**

CEA alleges, in all of the cases listed above, that
the defendants are infringing its U.S. Patent No.
4,701,028 ("the '028 patent") and U.S. Patent No.
4,839,412 ("the '412 patent"), which claim certain
liquid crystal display ("LCD") technology. (D.I. 90
at 3.) [FN1] CEA categorizes the defendants by
entity, as follows: module manufacturers, original
equipment manufacturers/distributors ("OEM/
distributors"), and retailers. (D.I. 186 at 11:18-
12:17.) In all, CEA has sued over 60 defendants
on the same patents. (*Id.* at 15:6-11.) CEA would like
the cases against all these defendants consolidated
for discovery, pretrial, and trial purposes. (*Id.* at
17:18-18:2.)

FN1. For ease of reference, and because plaintiffs
and defendants essentially make the same arguments
in all of their motions, I will cite the docket items
associated with *CEA v. Dell Computer Corp., et al.*,
Civ. No. 03-484-KAJ, and the transcript from the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



hearing on the parties' motions (D.I.186), unless otherwise noted. CEA did not file Motions to Consolidate in *CEA v. Tatung Co., et al.* and *CEA v. Sharp Corp., et al.*, Civ. No. 04-231-KAJ (D.Del. Apr. 13, 2004), which also allege infringement of the '028 and '412 patents. CEA also has a patent infringement case against Chi Mei Optoelectronics Corporation pending in the Northern District of California. (D.I. 186 at 9:20-23.)

At the hearing on the parties' motions, the defendants in all of the cases advanced a unified position in response to CEA's Motions to Consolidate. [FN2] (*Id.* at 20:3-12.) The defendants would like the case to go forward against the LCD module manufacturers only, those parties being Samsung Electronics, Fujitsu Display Technologies Corporation, and Tottori Sanyo, and for the case to be stayed against all remaining defendants. (*Id.* at 20:15- 21:1; 43:12-18.)

> FN2. From this point forward, any reference herein to "the defendants" means those defendants who were represented at the April 20, 2004 hearing. This does not include the defendants in *CEA v. Tatung Co., et al.* or the defendants in *CEA v. Sharp Corp., et al.* (See D.I. 186 at 21:9- 19.)

## III. STANDARD OF REVIEW

In general, a district court has broad discretion when deciding whether to consolidate or stay proceedings. *See* Fed.R.Civ.P. 42(a); *Bechtel Corp. v. Laborers' International Union,* 544 F.2d 1207, 1215 (3d Cir.1976). Federal Rule of Civil Procedure 42 provides that, "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Fed.R.Civ.P. 42(a) (2004).

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 738 (quotation omitted). When considering a motion to stay, the court considers the following factors: (1) whether a stay

would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set. *United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991).

## IV. DISCUSSION

### A. CEA's Motion to Consolidate

**\*2** CEA argues that, because the pending actions involve the same patent, they necessarily have common questions of law and fact, and that this court "routinely grants motions to consolidate when two actions are pending that involve the same or similar patents." (D.I. 90 at 4-5.) CEA also argues that consolidation is appropriate when a single plaintiff has filed multiple actions in the same court (*id.*), particularly where, as here, the cases involve the same patents, the same infringing products, and the same distribution chain (*id.* at 6).

At the April 20, 2004 hearing, the defendants proposed that the case go forward against the LCD module manufacturers, specifically, Samsung Electronics, Fujitsu Display Technologies Corporation, and Tottori Sanyo. (D.I. 186 at 20:15-21:1.) CEA argued that the retailer action, *CEA v. Best Buy Co., et al.*, Civ. No. 03-931-KAJ, should be consolidated with the manufacturer actions, the main reason being that haling the retailers into this court will force the manufacturers to consent to jurisdiction in order to defend their products. (*Id.* at 49:25-50:19.)

Because the defendants did not object to consolidating the cases against Samsung Electronics, Fujitsu Display Technologies Corporation, and Tottori Sanyo at the hearing (*see id.* at 22:2-6), and because the cases involve common questions of law and fact pertaining to infringement of the '028 and '412 patents, those cases will be consolidated for all pretrial and trial purposes, without prejudice to any of the manufacturers filing a motion to sever from the others at trial, once the pretrial matters are concluded. However, I will not consolidate the retailer action with the manufacturer cases. CEA has not come forward with any compelling reason why the case against the retailers should proceed in lockstep with the cases against the manufacturers.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



FROM                                    (TUE) 4. 25' 06  9:39/ST. 9:28/NO. 4865054812 P 22

Not Reported in F.Supp.2d                                                    **Page 3**
(Cite as: 2004 WL 1554382, *2 (D.Del.))

Therefore, CEA's Motions to Consolidate will be granted in part and denied in part; they are granted to the extent that they seek to consolidate the Samsung Electronics, Fujitsu Display Technologies Corporation, and Tottori Sanyo module manufacturers, and denied to the extent that they seek to consolidate the remaining defendants.

B. Defendants' Motions to Stay the Case

Defendants argue that CEA's case against the OEM/distributors and retailers should be stayed pending resolution of the case against the manufacturers. (D.I. 94 at 5; D.I. 186 at 41:23-42:11.) CEA responds that it would be unduly prejudiced and placed at a tactical disadvantage if a stay were granted, and that granting a stay as to the retailers would not simplify the issues in this case. (D.I. 106 at 4-6.) Applying the factors enumerated in *United Sweetener, supra,* I find that it is appropriate to stay the case against the OEM/distributors and the retailers pending the outcome of the case against the manufacturers.

First, CEA has not articulated, in its papers or at the hearing (*see* D.I. 186 at 25:24-29:4) any real prejudice or tactical disadvantage that it would suffer if the proceedings against the OEM/distributors and retailers are stayed. *See United Sweetner,* 766 F.Supp. at 217. CEA asserts that a stay would "substantially delay" its right to adjudicate its claims against the remaining defendants and that it would be most efficient for the court and the parties "to take discovery and present arguments in this case only one time and not through delayed piecemeal litigation." (D.I. 106 at 5.) Should CEA prevail in this case, it will be compensated for any delay it experiences in recovering damages against the remaining defendants by interest on the award. CEA also argues that, should a preliminary injunction be entered against the manufacturers, [FN3] the injunction would not be broad enough to encompass the retailers if the case against them is stayed. (D.I. 186 at 35:7-36:4.) Such a speculative argument, on its own, does not demonstrate enough prejudice to outweigh the remaining factors in favor of granting a stay. Furthermore, and as explained more fully below, staying the case against the remaining defendants may streamline the case and avoid piecemeal litigation altogether.

FN3. CEA has filed Motions for a Preliminary Injunction in *CEA v. Dell* (D.I.58) and *CEA v. Tottori Sanyo* (D.I.18).

*3 Although CEA argues that granting a stay would not simplify the issues pending against the retailers, "[i]t is common practice to stay all pending [patent] litigation except the first suit between the patent owner and a manufacturer or a higher level supplier." David F. Herr, *Annotated Manual for Complex Litigation,* § 33.63 (3d ed.2003); *see also Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed.Cir.1990) ("litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer"). Because the manufacturers are intimately involved in the design, operation, and use of the accused LCD panels, they are in the best position to contest the validity and infringement of CEA's asserted patents. Resolving these issues prior to proceeding against the OEM/distributors and retailers would surely simplify this case. If, for example, CEA's patents were found invalid or the manufacturers would found to be not infringing, then there would be no need to proceed against the OEM/distributors or retailers, thus conserving judicial resources and expense to the parties. [FN4]

FN4. As to the final two *United Sweetener* factors, discovery is not complete in any of the cases, and even though a trial date in October 2005 has been set in *CEA v. Dell,* Civ. No. 03-484-KAJ (*see* D.I. 106 at 3), neither of these factors weigh strongly against granting a stay under the circumstances presented by these cases.

V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that CEA's Motions to Consolidate in *CEA v. Dell Computer Corp., et al.,* Civ. No. 03-484-KAJ (D.I.89, D.I.142); *CEA v. Tottori Sanyo Electronic Co., Ltd.,* Civ. No. 03-857-KAJ (D.I.10, D.I.27); and *CEA v. Fujitsu Ltd.,* Civ. No. 03-1036-KAJ (D.I.14) are GRANTED IN PART and DENIED IN PART. They are GRANTED to the extent that they seek to consolidate the cases against Samsung Electronics, Fujitsu Display Technologies Corporation and Tottori Sanyo for pretrial and trial purposes, without prejudice to defendants filing motions to sever once the pretrial matters are completed; and in all other respects, CEA's Motions

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                    Page  4
(Cite as: 2004 WL 1554382, *3 (D.Del.))

to Consolidate are DENIED. Counsel should confer on an appropriate simplified case caption for the proceeding against the three named manufacturer defendants. It is further ORDERED that CEA's Motions to Consolidate in *CEA v. Best Buy Co., et al.*, Civ. No. 03-931-KAJ (D.I.48, D.I.81) are DENIED. It is further ORDERED that defendants' Motions to Stay the Case in Civ. No. 03-484-KAJ (D.I.93); Civ. No. 03-931-KAJ (D.I.47); and Civ. No. 04-099-KAJ (D.I.16) are GRANTED to the extent that they seek to stay the proceedings against the OEM/distributors and retailers.

Not Reported in F.Supp.2d, 2004 WL 1554382 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

. 1:04CV00582 (Docket) (Jun. 25, 2004)

. 1:04cv00099 (Docket) (Feb. 13, 2004)

. 1:03cv01036 (Docket) (Nov. 13, 2003)

. 1:03cv00857 (Docket) (Sep. 04, 2003)

. 1:03cv00484 (Docket) (May. 19, 2003)

**END OF DOCUMENT**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

TAB 2

Not Reported in F.Supp.2d                                    **Page 1**
Not Reported in F.Supp.2d, 2005 WL 2465898 (D.Del.)
**(Cite as: 2005 WL 2465898 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
**HONEYWELL INTERNATIONAL INC., and
Honeywell Intellectual Properties Inc.,
Plaintiffs,
v.
AUDIOVOX COMMUNICATIONS CORP.,
Audiovox Electronics Corporation, Nikon
Corporation, Nikon, Inc., Nokia Corporation;
Nokia Inc., Sanyo Electric Co.,
Ltd., and Sanyo North America Corporation,
Defendants.
HONEYWELL INTERNATIONAL INC., and
Honeywell Intellectual Properties Inc.,
Plaintiffs,
v.
APPLE COMPUTER, INC.; Argus A/K/A
Hartford Computer Group, Inc.; Casio
Computer
Co., Ltd.; Casio, Inc.; Concord Cameras; Dell
Inc.; Eastman Kodak Company; Fuji
Photo Film Co., Ltd.; Fuji Photo Film U.S.A.,
Inc.; Fujitsu Limited; Fujitsu
America, Inc.; Fujitsu Computer Products of
America, Inc.; Kyocera Wireless
Corp.; Matsushita Electrical Industrial Co.;
Matsushita Electrical Corporation
of America; Navman NZ Limited; Navman
U.S.A. Inc.; Olympus Corporation; Olympus
America, Inc.; Pentax Corporation; Pentax
U.S.A., Inc.; Sony Corporation; Sony
Corporation of America; Sony Ericsson Mobile
Communications AB; Sony Ericsson
Mobile Communications (USA) Inc.; Toshiba
Corporation; and Toshiba America,
Inc., Defendants.
OPTREX AMERICA, INC., Plaintiff,
v.
HONEYWELL INTERNATIONAL INC., and
Honeywell Intellectual Properties Inc.,
Defendants.
No. Civ.A. 04-1337-KAJ, Civ.A. 04-1338-KAJ,
Civ.A. 04-1536-KAJ.**

May 18, 2005.

Steven J. Balick, John G. Day, Ashby & Geddes,
Leslie A. Polizoti, Thomas C. Grimm, Morris,
Nichols, Arsht & Tunnell, Karen L. Pascale,
Bouchard, Margules & Friedlander, P.A.,
Wilmington, DE, for Plaintiffs.

Richard L. Horwitz, Philip A. Rovner, David Ellis
Moore, Potter Anderson & Corroon, LLP, William
J. Marsden, Jr., Thomas Lee Halkowski, Tara D.
Elliott, Fish & Richardson, P.C., Paul A. Bradley,
McCarter & English, LLP, Matt Neiderman, Duane
Morris LLP, Donald W. Huntley, Donald W.
Huntley, Esq., Robert J. Katzenstein, Robert Karl
Beste, III, Smith, Katzenstein, & Furlow, Amy
Elizabeth Evans, Cross & Simon, LLC, Chad
Michael Shandler, William J. Wade, Richards,
Layton & Finger, Arthur G. Connolly, III, Francis
DiGiovanni, Connolly, Bove, Lodge & Hutz, John
W. Shaw, Adam Wyatt Poff, Young, Conaway,
Stargatt & Taylor, Wilmington, DE, Barry M.
Graham, Darren M. Jiron, Timothy J. Vezeau,
Robert J. Benson, Avelyn M. Ross, Roderick B.
Williams, Christopher E. Chalsen, Christopher J.
Gaspar, Parker H. Bagley, Steven J. Rizzi, Arthur I.
Neustadt, Carl E. Schlier, Pro Hac Vice, for
Defendants.

*MEMORANDUM ORDER*

JORDAN, J.

Introduction & Background

*1 In these three actions, Honeywell International
Inc., a Delaware corporation, and Honeywell
Intellectual Properties Inc., an Arizona corporation,
(collectively "Honeywell") have asserted that their
rights under U.S. Patent No. 5,280,371, issued
January 18, 1994, (the " '371 patent) have been
infringed. The '371 patent claims a liquid crystal
display ("LCD") apparatus said to provide enhanced
brightness and clarity when compared with prior art
LCDs. (*See* '371 patent, attached to C.A. No. 04-
1338 KAJ Docket Item ["D.I."] 1 at Ex. 1, col. 1
lines 48-61; col. 6, lines 1-42.) In Civil Action No.
04-1337-KAJ, Honeywell asserts the '371 patent
against 8 defendants. (C.A. No. 04-1337-KAJ D.I.
39.) In Civil Action No. 04-1338-KAJ, it asserts the
same patent against another 27 defendants. [FN1] In
Civil Action No. 04-1536-KAJ, Optrex America,
Inc., a New York corporation, ("Optrex") has sued
for a declaratory judgment that it does not infringe
Honeywell's rights under the '371 patent and that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



FROM                                        (TUE) 4. 25' 06  9:35/ST.  9:28/NO. 4865054812 P 13

Not Reported in F.Supp.2d                                                    **Page   2**
(Cite as: 2005 WL 2465898, *1 (D.Del.))

the patent is invalid. (C.A. No. 04-1536-KAJ D.I. 1.)

> FN1. Honeywell chose to file two separate suits simultaneously because a conflict of interest of one of its law firms prevented that firm from representing Honeywell against certain of the defendants, but it now seeks consolidation of the actions. (*See* C.A. No. 04-1338-KAJ D.I. 135 at n. 1.)

Pending before me are several motions bearing on the management of these cases. [FN2] Honeywell seeks consolidation of the actions. (C.A. No. 04-1338-KAJ D.I. 134; C.A. No. 04-1536-KAJ D.I. 14) A third party, Seiko Epson Corporation, a Japanese company, ("Seiko Epson") seeks to intervene because it is the original manufacturer of LCDs said to be the infringing component in some of the defendants' consumer electronics. (*See* C.A No. 04-1337-KAJ D.I. 50; C.A. No. 04-1338-KAJ D.I. 136 at 7-9; Optrex, another seller of allegedly infringing LCDs to defendants in the suits filed by Honeywell, seeks to have its case tried first. [FN3] (C.A. No. 04-1536-KAJ D.I. 23.) And several of the defendants in the actions brought by Honeywell have filed motions to stay the litigation against them while Honeywell first tries its infringement claims against the manufacturers of the LCDs. (*See, e.g.*, C.A. No. 04-1337-KAJ D.I. 60, 63, 101, and 112; C.A. No. 04-1338-KAJ D.I. 95, 158, 161, 181, and 189.)

> FN2. A chart listing the motions filed by the parties is appended.

> FN3. Federal Rule of Civil Procedure 7(b)(1) provides in pertinent part that, "[a]n application to the court for an order shall be by motion...." It is the custom and expectation of this court that, unless otherwise ordered by the court, an application like Optrex's should be made by way of formal motion. That expectation was not met in this instance. Failure to abide by Rule 7 necessarily brought with it a failure to abide by Local Rule 7.1.1, respecting the certification of counsel required with all non-dispositive motions. Solely because Optrex's request, which came by way of a letter, can be readily disposed of in light of my rulings on the motions properly made, I have considered it and address it herein.

On May 16, 2005, I held a consolidated pretrial

conference in these cases pursuant to Federal Rule of Civil Procedure 16. At that time, I heard argument on the various motions and issued preliminary rulings. This Order confirms those rulings and provides a further explication for them. For the reasons stated herein, as well as those stated in open court at the Rule 16 conference, Seiko Epson's motion to intervene is granted, Honeywell's motion to consolidate is granted in part, Optrex's request is granted to the extent stated herein, and the motions to stay submitted by defendants in the Honeywell-filed cases are granted. In short, Honeywell will be required to litigate its infringement claims in the first instance against the manufacturers of the accused LCDs, not against the many customers of those manufacturers who incorporate the LCDs into their consumer electronics.

Standard of Review

**\*2** Motions to intervene are entrusted to the discretion of the court. *See Kleissler v. U.S. Forest Service,* 157 F.3d 964, 969 (3d Cir.1998) ("We will reverse a district court's determination on a motion to intervene as of right if the court has abused its discretion by applying an improper legal standard or reaching a conclusion we are confident is incorrect.") Intervention as of right is governed by Federal Rule of Civil Procedure 24(a), which states in relevant part, "[u]pon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." That rule has been interpreted to require proof of four elements from the applicant seeking intervention as of right: first, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation. *Kleissler,* 157 F.3d at 969.

A district court also generally has broad discretion

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



FROM                                    (TUE) 4. 25' 06   9:35/ST.  9:28/NO. 4865054812 P 14

Not Reported in F.Supp.2d                                                Page  3
(Cite as: 2005 WL 2465898, *2 (D.Del.))

when deciding whether to consolidate or stay proceedings. *See Bechtel Corp. v. Laborers' International Union*, 544 F.2d 1207, 1215 (3d Cir.1976) ("A United States district court has broad power to stay proceedings."); *Blake v. Farrell Lines, Inc.*, 417 F.2d 264, 266 (3d Cir.1969) ("the trial judge, under Rule 42(a), is given the broad authority to 'make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay' ").

With respect to consolidation, Federal Rule of Civil Procedure 42(a) provides that, "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732, 738 (3d cir.1983) (quotation omitted). When considering a motion to stay, the court considers the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set. *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F.Supp. 212, 217 (D.Del.1991).

Discussion

**\*3** These cases are the second set of LCD technology cases to come before this court on a grand scale. The first set, in which the lead case is *Commissariat A L'Energie Atomique v. Samsung, et al.*, C.A. No. 03-484-KAJ (consolidated), involved the plaintiff ("CEA") suing a host of manufacturers, distributors, and retailers of LCDs or products containing them. After sorting through the various motions to stay and to consolidate, I concluded that consolidation of cases against the manufacturer defendants was appropriate because those cases involved common questions of law and fact pertaining to infringement. *See id.*, May 13, 2004

Mem. Order at 5-6. However, I declined to consolidate the cases involving non-manufacturer defendants because no sound reason was given for immediately addressing what could only be the derivative liability of those defendants. *See id.* For that same reason, I stayed the cases against the non-manufacturer defendants, observing, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Id.* at 7 (quoting *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed.Cir.1990).

I was persuaded then and remain persuaded that large-scale litigation like this requires the business and strategic legal interests of the plaintiff to cede some ground to case management imperatives. It is impracticable to try an infringement case against 40 some defendants or third-party defendants with many different accused devices, and it is unwise to attempt any such thing when liability depends exclusively upon infringement being found as to an LCD component that the defendants do not manufacture and when at least some of the manufacturers of the LCDs are before the court and are willing to stand behind their products in this litigation. *Cf. Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed.Cir.1989) (noting that the "customer suit exception" to the preference for allowing a first-filed action to proceed first is based on "the manufacturer's presumed greater interest in defending its actions against charges of patent infringement").

> FN4. Optrex and Seiko Epson are before the court already. Other LCD manufacturers identified as "Curitel, Philips, Wintek, and Samsung SDI" have been named in a third party complaint (*see* C.A. No. 04-1338-KAJ D.I. 167 at 5), and LCD manufacturers identified as "Arima Display, AU Optronics, CPT, Hannstar, Hitachi, Primeview, Quanta Display, Inc., ST-LCD, TM Display, and Tottori Sanyo" have not been named or appeared in any of the cases to date. (*See id.*)

Honeywell has been frank to say that it deliberately avoided suing the manufacturers to avoid "the complications faced by this Court in the French government's LCD action, C.A. No. 03-484 [i.e., the *CEA* suit]." (C.A. No. 04-1338-KAJ D.I. 147 at 3, ¶ 2.) Honeywell also accurately assesses the several motions to stay and the motion to intervene

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



as an effort by the movants to "recast [Honeywell's lawsuits] as a case against LCD suppliers...." (C.A. No. 04-1338-KAJ D.I. 167 at 5.) What Honeywell fails to appreciate is that, from the perspective of the host of defendants Honeywell has chosen to sue, and in the interest of judicial economy, dealing with the manufacturers first is the fairest and most efficient way to proceed. It is not a complication to be resisted.

*4 Thus, Honeywell's motions to consolidate will be granted because the cases certainly do involve common questions of law and fact which make sense to handle for certain purposes on a consolidated basis. *See* Fed.R.Civ.P. 42(a). Whether a single trial against all the non-manufacturer defendants makes sense is a question for another day. For now it is sufficient to order that trial and pretrial activities with respect to the dispute between Honeywell and those manufacturer defendants presently before the court will be handled on a consolidated basis. Any pretrial activities with respect to Honeywell's claims against the non-manufacturer defendants will also be handled, for the time being, on a consolidated basis. It is likely that the claims against and by the manufacturer defendants will later be separated out for pretrial proceedings as well as a separate trial. As further noted herein, however, there will be some discovery permitted of the non-manufacturer defendants, so all will remain in the case for the time being.

The motion to intervene filed by Seiko Epson will also be granted, because it puts a willing manufacturer defendant in the forefront of litigation aimed squarely at its product. Seiko Epson correctly claims that it has met the test for intervention as of right under Rule 24(a). Its motion is timely; discovery has not even begun in the case and case management issues are only now being addressed. It has a sufficient interest in the litigation; indeed, as a manufacturer of the product component which is at the heart of these cases, it has a compelling interest. It can rightly claim that its interests will be impaired or affected, as a practical matter, by the disposition of the action, unless it is involved in the case directly and able to make its positions known. Finally, because it is uniquely situated to understand and defend its own product, its interests are not adequately represented by existing parties to the litigation.

For evidently similar reasons, Optrex has taken affirmative steps to insert itself in this litigation and to have the opportunity to have the dispute over its LCDs heard before the suits against the non-manufacturer defendants are permitted to go forward. As stated at the May 16 conference, I agree that the dispute between Honeywell and the manufacturers should go forward first. To that extent, Optrex's request to proceed with its claims on a priority basis will be granted.

As to the several motions to stay, they too are granted to the extent stated in open court. The non-manufacturer defendants will not be given a complete and immediate stay of all proceedings involving them, because I will permit Honeywell certain limited discovery to learn who the suppliers of LCDs are for the various devices that Honeywell must now specifically identify as accused products. [FN5] I will otherwise stay the litigation against the non-manufacturer defendants, however, since a stay would not unduly prejudice Honeywell, it will vastly simplify the issues and trial of the case against the manufacturer defendants, and it comes at time when discovery has not even begun and no trial date has been set. *See United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F.Supp. 212, 217 (D.Del.1991) (setting forth test for propriety of a stay). At the appropriate time, a separation of the suits against the manufacturer and non-manufacturer defendants may well be warranted, for ease of case administration.

FN5. At the case management conference, I granted a defense request that Honeywell be required to identify the products it is accusing of infringement. To date, it has only stated that "[a]t least some of the LCD screen-containing products manufactured, imported, offered for sale, and/or sold by [the named defendants] infringe the '371 patent literally and/or under the doctrine of equivalents...." (C.A. No. 04-1338-KAJ D.I. 1 at ¶ 53.)

*5 At the close of the case management conference, I instructed the parties to confer and provide me with proposed language respecting permissible discovery activities directed at the non-manufacturer defendants during the stay. A further and separate order will be entered following the parties' filing or filings in that regard.

Conclusion

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



FROM                                        (TUE) 4. 25' 06   9:37/ST.   9:28/NO. 4865054812 P 16

Not Reported in F.Supp.2d                                              **Page   5**
(Cite as: 2005 WL 2465898, *5 (D.Del.))

For the reasons stated in open court on May 16,
2005 and herein, it is hereby ORDERED that

(1) Honeywell's motions to consolidate (C.A. No.
04-1338-KAJ D.I. 134;  C.A. No. 04-1536-KAJ
D.I. 14) are GRANTED to the extent that Civil
Action Nos. 04-1337-KAJ, 04-1338-KAJ and 04-
1536-KAJ are consolidated for the present for all
purposes, with a consolidated case caption to be
suggested by the parties by June 17, 2005;

(2) Seiko Epson's motions to intervene (C.A. No.
04-1337-KAJ D.I. 50 and  C.A. No. 04-1338-KAJ
D.I. 136) are GRANTED;

(3) Optrex's request to proceed with its dispute in
advance of Honeywell being permitted to proceed
with its litigation against the non-manufacturer
defendants (C.A. No. 04-1536-KAJ D.I. 23) is
GRANTED to the extent described herein; and

(4) the several motions to stay (C.A. No. 04-1337-
KAJ D.I. 60, 63, 101 and 112; C.A. No. 04-1338
D.I. 95, 158, 161, 181 and 189) are GRANTED to
the extent described herein, with a further order
regarding the stay to be proposed by the parties no
later than June 17, 2005.

**HONEYWELL V. AUDIOVOX, ET AL.**

| C.A. No | Defendant | Pending Motions |
| --- | --- | --- |
| 04-1337 | Audiovox Communications | 1) Motion to Stay (D.I.112) |
| | Audiovox Electronics | 1) Customer defendants' Motion to Stay (D.I.101) |
| | Nikon Corporation Nikon Inc. | 1) Motion to Stay (D.I.60) |
| | Nokia Corporation Nokia Inc. | 1) Motion for leave to file third party complaint (D.I.57) 2) Motion to Stay (D.I.63) 3) Joinder in Toshiba's Motion to Bifurcate filed in C.A. No. 04-1138 at D.I. 164 (D.I.97) |
| | Sanyo Electric Co. Sanyo North America | No Motions |
| | Curitel Communications (Third | No Motions |

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                Page  6
(Cite as: 2005 WL 2465898, *5 (D.Del.))

|                      | |
|----------------------|-|
| Party Deft) | |
| Toshiba Corp. (Third Party Deft) | No Motions |
| Seiko Epson Corporation (non-party) | 1) Motion to Intervene (D.I.50) |

## HONEYWELL V. APPLE COMPUTER, ET AL.

| C.A. No | Defendant | Pending Motions |
|---------|-----------|-----------------|
| 04-1338 | Apple Computer | 1) Joinder (D.I.172) in Toshiba's motion to bifurcate (D.I.164)<br>2) motion to stay (D.I.181) |
| | Argus a/k/a Hartford Computer | 1) motion to stay (D.I.181) |
| | Casio Computer<br>Casio Inc. | 1) Joinder (D.I.172) in Toshiba's motion to bifurcate (D.I.164) |
| | Concord Cameras | 1) Joinder (D.I.172) in Toshiba's motion to bifurcate (D.I.164)<br>2) motion to stay (D.I.181) |
| | Dell Inc. | 1) Joinder (D.I.172) in Toshiba's motion to bifurcate (D.I.164)<br>2) motion to stay (D.I.181) |
| | Eastman Kodak | 1) Joinder (D.I.194) in Toshiba's motion to bifurcate (D.I.164)<br>2) motion to stay (D.I.181) |
| | Fuji Photo Film<br>Fuji Photo Film USA | 1) motion for more definite statement, for stay, and for partial dismissal (D.I. 95)<br>2) motion to transfer (D.I.97)<br>3) brief filed (D.I.156) in support of Seiko Epson's motion to intervene (D.I. 136)<br>4) briefs filed (D.I.166, 183) in support of Toshiba's motion to bifurcate (D.I. 164) |
| | Fujitsu Limited<br>Fujitsu America<br>Fujitsu Computer | 1) Joinder (D.I.172) in Toshiba's motion to bifurcate (D.I.164) |
| | Kyocera Wireless | 1) motion to stay (D.I.158) |

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                        Page  7
(Cite as: 2005 WL 2465898, *5 (D.Del.))

```
------------------------------------------------------------------
      Matsushita Electrical      1) Joinder (D.I.172) in Toshiba's
          Industrial
  Matsushita Electrical Corp.      motion to bifurcate (D.I.164)
------------------------------------------------------------------
          Navman NZ              1) motion to stay (D.I.181)
          Navman USA
------------------------------------------------------------------
        Olympus Corp.            1) motion to stay (D.I.161)
      Olympus America
------------------------------------------------------------------
      Pentax Corporation         1) motion to stay (D.I.158)
          Pentax USA             2) Joinder (D.I.172) in Toshiba's
                                    motion to bifurcate (D.I.164)
------------------------------------------------------------------
          Sony Corp.             1) Joinder (D.I.172) in Toshiba's
      Sony Corp. Of America        motion to bifurcate (D.I.164)
                                 2) motion to stay (D.I.189)
------------------------------------------------------------------
    Sony Ericsson Mobile AB    1) Joinder (D.I.196) in motion to stay
    Sony Ericsson Mobile USA             (D.I.158)
------------------------------------------------------------------
      Toshiba Corporation         1) motion to bifurcate (D.I.164)

------------------------------------------------------------------
      Toshiba America                    no motions
------------------------------------------------------------------
    Philips Electronics (3rd            no motions
          pty dft)
------------------------------------------------------------------
  Wintek Electro-Optics (3rd            no motions
          pty
          dft)
------------------------------------------------------------------
    Optrex America (3rd pty             no motions
          dft)
------------------------------------------------------------------
    Seiko Epson (non-party)     1) motion to intervene (D.I.136)
------------------------------------------------------------------
    PLAINTIFFS--HONEYWELL       1) motion to consolidate and for stay
                                         (D.I.134)
------------------------------------------------------------------
```

## OPTREX AMERICA INC. V. HONEYWELL

```
-----------------------------------------------------------------
C.A. No  Defendant              Pending Motions
-----------------------------------------------------------------
04-1536  Honeywell International 1) Motion to consolidate and for stay
                                    (D.I.14)
-----------------------------------------------------------------
         Honeywell Intellectual  1) Motion to consolidate and for stay
```

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                        Page  8
(Cite as: 2005 WL 2465898, *5 (D.Del.))

               Properties                (D.I.14)
------------------------------------------------------------------------

  Not Reported in F.Supp.2d, 2005 WL 2465898
(D.Del.)

   Motions, Pleadings and Filings (Back to top)

. 2005 WL 3666888 (Trial Pleading) Third
Amended Complaint and Demand for Jury Trial
(Nov. 7, 2005)

. 2005 WL 3666890 (Trial Pleading) First
Amended Complaint and Demand for Jury Trial
(Nov. 7, 2005)

. 2005 WL 3666889 (Trial Pleading) Honeywell's
Reply to the Cross-Claim of Third Party
Defendant Philips Electronics North America
Corporation (Oct. 17, 2005)

. 2004 WL 3656367 (Trial Pleading) Complaint
and Demand for A Jury Trial (Dec. 20, 2004)

. 1:04cv01338 (Docket) (Oct. 6, 2004)

**END OF DOCUMENT**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

TAB 3

Not Reported in F.Supp.                                                    **Page  1**
Not Reported in F.Supp., 1994 WL 803508 (N.D.Tex.), 67 Fair Empl.Prac.Cas. (BNA) 189
(Cite as: 1994 WL 803508 (N.D.Tex.))
▷

**Motions, Pleadings and Filings**

United States District Court,
N.D. Texas, Dallas Division.
**Sharon KINNEBREW, Plaintiff,**
v.
**GULF INSURANCE COMPANY, Defendant.**
**CA No. 3:94-CV-1517-R.**

Nov. 28, 1994.

MEMORANDUM OPINION AND ORDER

BUCHMEYER, District Judge.

*1 Now before the Court is the Motion to Compel Arbitration filed by Defendant Gulf Insurance Company ("Gulf" or "Defendant"). For the reasons hereinafter stated, Defendant's Motion to Compel Arbitration is **GRANTED.**

*Background Facts*

Sharon Kinnebrew ("Plaintiff") is a claims administrative manager for Gulf. Because she believes that she has been paid substantially less than the male manager who held her position before her, Plaintiff has sued Gulf for sex discrimination violations of the Texas Commission on Human Rights Act and for violations of the Equal Pay Act of 1963.

During Plaintiff's employment, Gulf instituted a Dispute Resolution Procedure and Arbitration Policy (the "Arbitration Policy"). Gulf mailed a copy of its Arbitration Policy and an explanatory memo to each employee, including Plaintiff. Gulf also outlined its Arbitration Policy in its Employee Handbook. The Handbook provides as follows:
If the internal dispute resolution procedure does not resolve the concern, the dispute may be submitted to binding arbitration in accordance with Primerica employment arbitration policy. [FN1] Arbitration is an essential element of your employment relationship and is a condition of your employment. This policy makes arbitration required, and exclusive, for the resolution of all employment disputes which may arise...

Rather than submit her claims to arbitration, Plaintiff filed claims with the Equal Employment Opportunity Commission and Texas Human Rights Commission and then filed this lawsuit.

*Analysis*

Gulf now moves for an order compelling Plaintiff to arbitrate her claims. Plaintiff responds that the Court should not defer to Gulf's Arbitration Policy because (i) it requires Plaintiff to forego several substantive rights and (ii) any agreement to arbitrate was procured by undue means.

The Federal Arbitration Act [FN2] (the "Act") provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." [FN3] Accordingly, the Act manifests a "liberal federal policy favoring arbitration agreements."   [FN4] To determine whether parties should be compelled to arbitrate their dispute, district courts perform a two-step inquiry: first, the court must determine whether the parties agreed to arbitrate the dispute; and, if so, the court must then consider whether any federal statute or policy renders any of the parties' claims nonarbitrable.    [FN5]    Essentially,    Plaintiff's arguments against compulsory arbitration focus on the second step of this Court's inquiry.

*Gulf's Arbitration Procedure Does Not Deprive Plaintiff of Substantive Rights*

Generally, claims of violations of the Texas Commission on Human Rights Act and of the Equal Pay Act of 1963 can be subjected to compulsory arbitration.  [FN6] However, Plaintiff argues that she should not be compelled to arbitrate her claims because the remedies available to her in Gulf's Arbitration Policy are not as favorable as the remedies available in a judicial forum. Specifically, Plaintiff notes that Gulf's Arbitration Policy provides that money damages are limited to "an amount sufficient to compensate the aggrieved party for such direct injury as the arbitrator determines such party has suffered" and that reinstatement is available "only if money damages are insufficient as a remedy."  Moreover, unlike the statutory provisions that would control in a judicial forum, Gulf's Arbitration Policy does not provide for the award of punitive damages, attorneys' fees, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                                          **Page   2**
(Cite as: 1994 WL 803508, *1 (N.D.Tex.))

equitable relief. Plaintiff therefore argues that, because Gulf's Arbitration Policy requires Plaintiff to forego these "substantive rights," this Court should not compel Plaintiff to arbitrate her claims.

**\*2** Plaintiff's argument, however, misconstrues the nature of "substantive rights." "Substantive rights" is defined as "a right to equal enjoyment of fundamental rights, privileges and immunities; distinguished from procedural right." [FN7] Plaintiff does not forego "substantive rights" when compelled to arbitrate under a more limited remedial scheme, for Gulf's Arbitration Policy fully protects Plaintiff's right to be free from discrimination. Once Plaintiff agreed to arbitrate her claims arising from her employment, she must abide by her agreement "unless Congress itself has evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue." [FN8] It is Plaintiff's burden, therefore, to show that Congress or the Texas Legislature intended to preclude any waiver of judicial remedies, [FN9] but she does not cite any case or statutory provision supporting her position. [FN10]

*Plaintiff's Agreement to Arbitrate Her Claims Is Enforceable*

In essence, Plaintiff also argues that she should not be bound by Gulf's Arbitration Policy because Gulf unilaterally distributed the policy to employees without explaining its effect and without seeking their express agreement. Plaintiff does not dispute, however, that she received a copy of Gulf's Arbitration Policy and that she continued her employment after receiving a copy of the Arbitration Policy. Plaintiff's argument therefore fails for two reasons. First, federal courts do not hesitate to find an enforceable agreement to arbitrate when an arbitration policy is instituted during an employee's employment and the employee continues to work for the employer thereafter. [FN11] Second, Plaintiff's claim that any agreement to arbitrate would be an unenforceable adhesion contract is an attack on the agreement as a whole and is therefore subject to arbitration itself. [FN12]

Plaintiff also urges obliquely that the any agreement to arbitrate would be unenforceable as unduly burdensome and unconscionable. However, Plaintiff again offers no support for her position. To the limited extent that Plaintiff places the issue before

the Court, the Court reiterates that an attack on the agreement as a whole -- that the agreement is unduly burdensome or unconscionable -- is also a subject for arbitration.

*Conclusion*

For the above stated reasons, it is **ORDERED** that Defendants' Motion to Compel Arbitration is **GRANTED.** It is further **ORDERED** that this action be **STAYED** until arbitration is completed pursuant to Gulf's Arbitration Policy. The Court will issue a revised Scheduling Order at that time. The Court retains jurisdiction over this action to consider any statutory remedies to which Plaintiff is entitled after arbitration is completed.

FN1.  As a subsidiary of Primerica, Gulf follows Primerica's policies and procedures.

FN2.  9 U.S.C. § 1, *et seq.*

FN3.  9 U.S.C. § 2.

FN4.  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

FN5.  *R.M. Perez & Assoc. v. Welch,* 960 F.2d 534, 538 (5th Cir. 1992).

FN6.  *See Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229, 230 (5th Cir. 1991) (holding that Title VII claims can be subjected to compulsory arbitration).

FN7.  BLACK'S LAW DICTIONARY 1429 (6th ed. 1990).

FN8.  *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 11 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting *Mitsubishi Motors v. Soler Chrysler-Plymouth,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)).

FN9.  *See id.*

FN10.  In contrast, Defendant offers *Morgan v. Smith Barney, Harris Upham & Co.,* 729 F.2d 1163, 1168 n.7 (8th Cir. 1983) (holding that "[t]he potential unavailability of punitive damages is not a ground for denying effect to an otherwise valid agreement to arbitrate").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                              Page   3
**(Cite as: 1994 WL 803508, \*2 (N.D.Tex.))**

    FN11. *See, e.g., Lang v. Burlington Northern R.R.,* 835 F. Supp 1104 (D. Minn. 1993).

    FN12. *See R.M. Perez & Associates,* 960 F.2d 534, 538 (5th Cir. 1992); *Weston v. ITT-CFC,* No. 3:92-CV-2044-H, 1992 WL 473846 (N.D. Tex. Dec. 3, 1992).

  Not Reported in F.Supp., 1994 WL 803508 (N.D.Tex.), 67 Fair Empl.Prac.Cas. (BNA) 189

  **Motions, Pleadings and Filings (Back to top)**

. **3:94cv01517 (Docket) (Jul. 15, 1994)**

**END OF DOCUMENT**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

TAB 4

Not Reported in F.Supp.                                                      **Page   1**
Not Reported in F.Supp., 1997 WL 1068630 (N.D.Ga.)
**(Cite as: 1997 WL 1068630 (N.D.Ga.))**
**C**

## Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, N.D. Georgia.
**Larry E. PORTER, Plaintiff,**
v.
**CIGNA (INSURANCE COMPANY OF NORTH
AMERICA), Defendant.
No. CIV.A.1:96-CV765MHS.**

March 26, 1997.

ORDER

SHOOB, Senior J.

**\*1** This action is before the Court on defendant's motion to compel arbitration and to stay judicial proceedings. For the reasons stated below, the Court grants defendant's motion.

*Factual Background*

Plaintiff brings this action against defendant Insurance Company of North America ("CIGNA") alleging violation of his rights under the Age Discrimination in Employment Act, 29 U.S.C. § 621 (ADEA) and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (ADA). Plaintiff contends that on August 7, 1995, CIGNA improperly terminated his position of employment based on his age and physical disabilities. Now CIGNA has filed this motion to compel arbitration of plaintiff's federal claims pursuant to the company's internal employment policy mandating arbitration of all serious legal claims against the company. CIGNA asserts that its arbitration requirement is authorized and enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.

During plaintiff's term of employment, and approximately one year prior to his termination, CIGNA management issued a memo notifying all employees of its new arbitration policy. The memo included a summary of the new policy, which indicated that employee actions under the ADA and the ADEA were among those now subject to compulsory, final, and binding arbitration. [FN1]

Defendant asserts that this policy constitutes a binding arbitration contract to which plaintiff consented and now must adhere. Plaintiff claims that he did not agree to subject his claims to arbitration and that the policy is thus unenforceable.

FN1. The policy states:
In the interest of fairly and quickly resolving employment-related disagreements and problems, CIGNA Property-Casualty Division's policy is that mediation/arbitration by a neutral third-party is the required and final means for the resolution of any serious disagreements and problems not resolved by the internal dispute resolution process. Both the Division and the employee will be bound by any mutually agreeable resolution arrived as a result of mediation or by any decision made by an arbitrator. any agreed upon resolution or arbitrator's decision will be enforceable in court, but mediation/arbitration must be used before going to court.
This policy is part of the employment relationship between an employee and CIGNA Property-Casualty Division. It is not, however, a guarantee that employment will continue for any specified period of time or end only under certain conditions.

*Analysis*

The Court concludes that defendant's arbitration policy constitutes a binding part of plaintiff's employment contract and is enforceable pursuant to the FAA. The language of the policy makes clear that a contractual duty of arbitration was created, and the terms of the policy explicitly apply to the federal claims plaintiff has asserted in this case. Therefore, the Court grants defendant's motion to compel arbitration and to stay judicial proceedings.

The FAA authorizes arbitration of legal claims whenever there exists a written agreement to arbitrate and the claim relates to an activity affecting interstate commerce. 9 U.S.C. § 2. The policy at issue here falls squarely within the parameters of the FAA because the arbitration policy was written and plaintiff's employment involved interstate commerce. Therefore, the only real issue here is whether plaintiff agreed to be bound by the policy.

Plaintiff alleges that he did not consent to be bound by the arbitration policy. The record establishes,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



FROM                                                    (TUE) 4. 25'06   9:32/ST. 9:28/NO. 4865054812 P 8

Not Reported in F.Supp.                                                    Page   2
(Cite as: 1997 WL 1068630, *1 (N.D.Ga.))

however, that all elements required for a binding contract to arbitrate are present in this case. "Although the parties' intent controls ... whether they agreed to arbitrate a particular dispute," *Armijo v. Prudential Insurance Co.*, 72 F.3d 793, 797 (10th Cir.1995), the parties' intentions are "generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Here, plaintiff admits that defendant notified him of the new policy. Plaintiff's continued employment after such notification and failure to object to the new condition demonstrate his intent to be bound. Furthermore, mutuality of obligation is established by explicit policy language stating that both employer and employee are bound to submit employment disputes to arbitration. *See Albert v. National Cash Register Co.*, 874 F.Supp. 1324, 1326 (S.D.Fla.1994). And plaintiff's continued employment with defendant after notification of the new requirement constitutes sufficient consideration for the new condition. *Durkin v. CIGNA Property & Casualty Corp.*, 1996 WL 566775 (D.Kan.1996) at 5. In addition, "[t]he agreement of one party to a contract to arbitrate disputes is sufficient consideration to support the other party's agreement to do the same." *Lacheney v. ProfitKey Int'l.*, 818 F.Supp. 922, 925 (E.D.Va.1993).

**\*2** Plaintiff's contention that the arbitration policy amounts to a contract of adhesion is also unavailing. "Mere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements [are unenforceable]." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). Plaintiff's employment contract, including the arbitration provision, was not so unfair as to offend public policy. It is therefore not void as an adhesion contract.

*Summary*

The Court GRANTS defendant's motion for an extension of time to respond to discovery [# 15-1], and GRANTS defendant's motion to compel arbitration [# 8-1] and to stay judicial proceedings [# 8-2].

Not Reported in F.Supp., 1997 WL 1068630 (N.D.Ga.)

**Motions, Pleadings and Filings (Back to top)**

. 1:96cv00765 (Docket) (Apr. 01, 1996)

**END OF DOCUMENT**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



TAB 5

Not Reported in F.Supp.2d                                                            **Page 1**
Not Reported in F.Supp.2d, 1999 WL 54563 (E.D.Pa.)
**(Cite as: 1999 WL 54563 (E.D.Pa.))**
▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
**David L. WETZEL, Plaintiff,**
**v.**
**BALDWIN HARDWARE CORPORATION**
**Defendant.**
**No. Civ. 98-3257.**

Jan. 29, 1999.
David L. Wetzel, Lebanon, PA, Plaintiff, pro se.

Jeffrey W. Soderberg, Greenberg and Soderberg, LLP, Media, PA, USA, for Baldwin Hardware Corp., Defendant.

*MEMORANDUM AND ORDER*

VAN ANTWERPEN, J.

**I. INTRODUCTION**

**\*1** This action is filed pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621-634. The Plaintiff in this case, David Wetzel, was employed by the Defendant, Baldwin Hardware Corporation. Defendant now asks this court to dismiss this action and compel arbitration of Mr. Wetzel's ADEA claim. We have reviewed the record and conclude that for the following reasons, Defendant's motion is denied.

**II. FACTS**

The facts in this case are largely not in dispute. Mr. Wetzel filed an age discrimination claim with the Equal Employment Opportunity Commission ("EEOC") on February 19, 1997. Pl.'s Mot. at 1. [FN1] On March 27, 1998, the EEOC dismissed Mr. Wetzel's claim and provided him with a "notice of right to sue." Def.'s Mot., Ex. A. [FN2] Mr. Wetzel filed his ADEA claim in federal court within the requisite 90 day period on June 24, 1998. *Id.*

    FN1. Motion of Plaintiff to Oppose Defendant Baldwin Hardware Corporation's Motion to Dismiss filed on January 6, 1999, is hereinafter referred to as "Pl.'s Mot. at __."

    FN2. Motion of Defendant Baldwin Hardware

Corporation to Dismiss this Action and Compel Arbitration and accompanying papers filed on December 7, 1998, is hereinafter referred to as "Def.'s Mot. at __."

Meanwhile, Defendant informed its employees on July 22, 1997, that it was implementing a Corporate Dispute Resolution Policy ("CDRP"). Def.'s Mot. at ¶ 4. The CDRP was distributed to all employees with an accompanying memorandum and a document titled "Questions and Answers" which helped to explain the CDRP. *Id.*

The CDRP provides a two-step dispute resolution mechanism of mediation and arbitration that clearly cover claims brought under the ADEA: "all forms of unlawful discrimination including, but not limited to, race, color, sex, religion, national origin, disability, marital status or age." Def.'s Mot., Ex. B. It also provides:

  Under this Policy, which is a condition of
  continued employment and binding upon the
  Company and the employee, all claims and disputes
  a current or former employee within the United
  States might have arising out of the employee's
  employment or termination, which are not resolved
  through the Company's Open Door Policy and
  other normal human resource channels, shall be
  resolved through mediation and, if necessary,
  binding arbitration. The mediation and arbitration
  will be conducted by a neutral third party, the
  American Arbitration Association.

*Id.* The Defendant pays for the majority of the fees associated with mediation and arbitration and allows for a full range of discovery. *Id.* While the CDRP applies to relief sought through the courts, it does not apply to complaints filed with state and federal agencies like the EEOC. *Id.*

Mr. Wetzel received a copy of the CDRP and accompanying material on or about July 29, 1997. Aff. McMullen at ¶ 4. He refused, however, to sign a form which stated "I acknowledge receipt of the corporate dispute resolution policy and the questions and answers." *Id.* Moreover, one of the senior managers at Baldwin made a statement that the CDRP and/or accompanying materials are not "a *contract* or anything ... just shows that you received a copy." Pl.'s Mot. at 2. Mr. Wetzel was apparently not encouraged to enter arbitration after he informed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                    **Page  2**
(Cite as: 1999 WL 54563, *1 (E.D.Pa.))

the Defendant on May 12, 1998 and May 22, 1998, that he had the "notice of right to sue" from the EEOC. *Id.* at 1. Mr. Wetzel continues to be employed by the Defendant.

**\*2** Defendant now argues that the CDRP constitutes an enforceable agreement to arbitrate claims under the Federal Arbitration Act, 9 U .S.C. § 1 *et seq.* Defendant asks this court to dismiss this action and direct that Mr. Wetzel's age discrimination claim be resolved pursuant to the CDRP which provides arbitration before the American Arbitration Association as an exclusive remedy.

Plaintiff, in turn, argues that the CDRP is not binding and amounts to no more than an option for employees at Baldwin. In the alternative, he asserts that this action cannot fall under the Defendant's CDRP because his age discrimination claim was filed with the EEOC prior to the CDRP's promulgation. We will address each of these arguments in turn.

### III. DISCUSSION

The Federal Arbitration Act ("FAA") directs courts towards rigorous enforcement of arbitration. The FAA provides: "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Sections 3 and 5 of the FAA provide that a district court may order a stay of the proceedings and compel the case to arbitration pursuant to the agreement.

The FAA was enacted to reverse longstanding judicial hostility to arbitration agreements by placing them on the same footing as other contracts. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110, 1113 (3d Cir.1993). Federal policy clearly favors arbitration as noted by the Supreme Court:
  questions of arbitrability must be addressed with a
  healthy regard for the federal policy favoring
  arbitration ... The Arbitration Act establishes that,
  as a matter of federal law, any doubts concerning
  the scope of arbitrable issues should be resolved in
  favor of arbitration, whether the problem at hand is
  the construction of the contract language itself or

an allegation of waiver, delay or like defense to arbitrability.
  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Contr. Corp.,* 460 U.S. 1, 24-25 (1983)).

Moreover, claims brought under the ADEA may clearly be subject to an arbitration agreement, enforceable pursuant to the FAA. *Seus v. John Nuveen & Co., Inc.,* 146 F.3d 175, 180 (3d Cir.1998). The Supreme Court has held that arbitration of a claim made under the ADEA is not inconsistent with the statutory framework and purposes of the ADEA. *Gilmer,* 500 U.S. at 27.

Much of the rationale behind a favorable view on arbitration is that a party does not relinquish its substantive rights when it agrees to arbitrate claims arising under a federal statute. [FN3] "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors,* 473 U.S. at 628. Indeed, the question is whether the employer's arbitral forum actually vindicates the employee's statutory cause of action. *Id.* at 637; *Gilmer,* 500 U.S. at 28. Defendant's CDRP uses neutral arbitrators, adequate discovery, adequate types of relief, while paying a large majority of the expenses associated with the process. Def.'s Mot., Ex. B. Defendant's arbitration scheme, therefore, allows for the vindication of individual claims, thereby allowing the ADEA to serve its intended remedial and deterrent function. *Gilmer,* 500 U.S. at 28.

FN3. Disputes between employer and employee have often been consigned to an administrative forum. Claims of physical injury and even death brought under the state workmen's compensation scheme, for example, may only be redressed by an administrative board which provides the exclusive means for recovery against an employer. See, e.g., Pennsylvania Workmen's Compensation Act, section 303(a), 77 P.S. § 481(a). To be certain, age discrimination is a serious matter, but if other serious claims can adequately addressed in a workman's compensation setting, it would seem that age discrimination claims could be adequately addressed in an appropriate non-judicial forum such as arbitration.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



FROM                                    (TUE) 4.25'06  9:30/ST.  9:28/NO. 4865054812 P  4

Not Reported in F.Supp.2d                                                        **Page  3**
(Cite as: 1999 WL 54563, *2 (E.D.Pa.))

A. The Corporate Dispute Resolution Policy
(CDRP)

  *3 The first issue in the present case is whether
Defendant's CDRP is an enforceable agreement. We
find that it is. Arbitration is a matter of contract
between the parties and the determination of whether
the agreement is enforceable is made under
Pennsylvania law. *Goodwin v. Elkins & Co.,* 730
F.2d 99, 108 (3d Cir.1984). While the intention of
the parties should control, all doubts should be
resolved in favor of arbitration. *Mitsubishi,* 473
U.S. at 626; *Moses H. Cone Memorial Hosp.,* 460
U.S. at 24-25.

  In determining whether the CDRP amounts to a
contract between the Defendant and its employees,
we must first examine whether there has been an
offer, acceptance of that offer and consideration. It
is well established, under Pennsylvania law, that an
offer must be definite and "define its terms, specify
the thing offered and be an intention of the present
or the future to be bound." *Morosetti v. Louisiana
Land & Explorer Co.,* 564 A.2d 151, 152 (Pa.1989)
. Moreover, an employee handbook or policy will
not be considered a contract, unless a statement by
an employer exists as to its intent to be bound:
  Importantly, we do not mean to say that an
  employer cannot create a legally binding 'contract'
  with his employees via an employment handbook.
  It is for the court to interpret the handbook to
  discern whether it contains evidence of the
  employer's intention to be legally bound ... A
  reasonable employee may be presumed to regard
  such handbooks as having legally binding
  contractual significance when the handbook, or oral
  representations about the handbook, in some way
  clearly state that it is to have such effect.
  *Klages v. Sperry Corp.,* No. 83-3295, 1986 WL
7636, at *7 (E.D.Pa.1986). Here, the CDRP states:
"Under this policy, which is a condition of
continued employment and binding upon the
Company and the employee, all claims and disputes
... shall be resolved though mediation and, if
necessary, binding arbitration." Def.'s Mot., Ex. B.
Defendant's arbitration policy is explicit and clearly
expresses the intent of Defendant to be bound by its
terms. Moreover, there is no dispute that Mr.
Wetzel received the policy and that he was put on
notice by Defendant's distribution of the CDRP at
the end of July. [FN4]

FN4. Mr. Wetzel refused to sign the standard form
distributed by the Defendant that acknowledges that
he received the CDRP, *see* Def.'s Mot., Ex. D,
although there is no dispute that Mr. Wetzel had
actually received the CDRP.

  Mr. Wetzel's continued employment with the
Defendant, furthermore, constitutes his acceptance
of the CDRP. Not only does Defendant's policy
explicitly indicate that continued employment
indicates acceptance of the CDRP, *see id.,* but other
courts agree that "an employee's decision to
continue working with an employer for a substantial
period of time after the imposition of a new policy,
demonstrates acceptance of its terms." *Venuto v.
Insurance Co. of North America,* No. Civ. A. 98-
96, 1998 WL 414723,*5 (E.D.Pa.1998); *see also
Kinnebrew v. Gulf Insurance Co.,* CA. No. 3-94-
CV-1517-R, 1994 WL 803508,*2 (N.D.Tex.1994);
*Durkin v. Cigna Property & Casualty Corp.,* 942
F.Supp. 481, 488 (D.Kan.1996). The fact that Mr.
Wetzel did not participate in drafting the agreement,
verbally assent, or sign anything, furthermore, does
not render his consent invalid. *Venuto,* 1998 WL
414723, at *4; *see also* 9 U.S.C. § 2.

  *4 Mr. Wetzel's continued employment also
provided sufficient consideration here. *See, e.g.,
Durkin,* 942 F.Supp. at 488; *Lang v. Burlington
Northern R.R. Co.,* 835 F.Supp. 1104, 1106
(D.Minn.1993); *Lacheney v. ProfitKey Int'l, Inc.,*
818 F.Supp. 922, 925 (E.D.Va.1993). As this court
must generously construe the parties intentions in
favor of arbitrability, *see Mitsubishi,* 473 U.S. at
626, the explicit terms of the CDRP and continued
employment of Mr. Wetzel are sufficient basis for
finding that an enforceable arbitration agreement
exists.

  Mr. Wetzel's assertions that the Defendant had
made various statements relating to the voluntary
nature of the CDRP, *see* Pl.'s Mot. at 2, are without
merit. In face of the explicit language of the CDRP,
it is hard to believe that managers at Baldwin made
such statements with the intent to communicate that,
contrary to the plain language of the CDRP, the
arbitration policy was optional. The use of the word
"option" in the memorandum accompanying the
CDRP, for example, merely conveyed that the
CDRP represented a more formal process in addition
to the Defendant's existing informal grievance
procedures. Def.'s Mot., Ex. B; Def.'s Resp. at 9.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



FROM                                      (TUE) 4. 25' 06   9:31/ST. 9:28/NO. 4865054812 P  5

Not Reported in F.Supp.2d                                                    Page   4
(Cite as: 1999 WL 54563, *4 (E.D.Pa.))

[FN5] We agree with the Defendant that it appears that Mr. Wetzel has taken most of these statements out of context. *See* Pl.'s Mot. at 2; Def.'s Resp. at 9. We find, therefore, that the statements highlighted by Mr. Wetzel do not create any ambiguity as to whether the CDRP is enforceable.

> FN5. Reply Memorandum of Defendant Baldwin Hardware Corporation in Support of its Motion to Dismiss this Action and Compel Arbitration, dated January 25, 1999, is hereinafter referred to as: "Def.'s Resp. at __."

In addition, this court does not find that Mr. Wetzel was subject to an adhesion contract. "Mere inequality of bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer,* 500 U.S. at 33. Defendant's CDRP is not so unfair or unreasonable as to offend public policy and so be void as an adhesion contract. Nor did the Defendant somehow sneak the arbitration agreement by its employees by burying it in an employee handbook. There is simply no reason, therefore, to not find that the CDRP is valid and enforceable.

B. Timing of Plaintiff's Action

Mr. Wetzel also argues that because he filed his age discrimination claim with the EEOC on February 19, 1997, prior to the implementation of the CDRP, he is not subject to its mandatory arbitration provisions. Pl.'s Mot. at 2. Claims filed prior to the implementation of the CDRP are clearly outside the scope of the mandatory arbitration provisions as there is no retroactive language in the Defendant's CDRP. *See* Def.'s Mot., Ex. B. The question for this court, therefore, is whether Mr. Wetzel's age discrimination claim began with his filing of the EEOC charge or with the later June 24, 1998 filing of his federal complaint.

Many factors indicate that the EEOC filing is a necessary part of the civil court action. First, when bringing an age discrimination claim, filing a charge with the EEOC is a condition precedent. *See, e.g., Jackson v. Richards Medical Co.,* 961 F.2d 575, 578 (6th Cir.1992); *Perkins v. Silverstein,* 939 F.2d 463, 470 (7th Cir.1991); *Mercado-Garcia v. Ponce Federal Bank,* 979 F . 2d 890, 895 (1st Cir.1992). The ADEA states: "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Opportunity Commission." 29 U.S.C. § 626(d). The filing requirement with the EEOC also functions as a statute of limitations, *see, e.g., Jackson,* 961 F.2d at 578, in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court, *see Butts v. City of New York Dept. of Housing,* 990 F.2d 1397, 1401 (2d Cir.1993).

*5 In addition, "[t]he scope of the civil complaint is accordingly limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." *Powers v. Grinnell Corp,* 915 F.2d 34, 38 (1st. Cir.1990) (quoting *Less v. Nestle Co.,* 705 F.Supp. 110, 112 (W.D.N.Y.1988)); *see also Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534, 544 (7th Cir.1988); *Miller v. Int'l Telephone & Telegraph Corp.,* 755 F.2d 20, 23-24 (2d Cir.1985). The allegations in the civil complaint must be within the ambit of the EEOC charge which creates a substantial identity of issues between the EEOC proceeding and the current civil action. *Steffen,* 859 F .2d at 544.

We believe, therefore, that for the purposes of the CDRP, the Plaintiff's action commenced when he filed his charge with the EEOC, and not with his federal complaint. [FN6] Moreover, the very existence of the EEOC filing requirement is to put the employer on notice while attempting to achieve conciliation. *Rabzak v. Berks County,* 815 F.2d 17, 20 (3d Cir.1987). A congressional report on one of the amendments to the ADEA stated:

> FN6. The Defendant contends that the CDRP does not cover agency actions such as a proceeding with the EEOC, *see* Def.'s Mot, Ex. B, and therefore, this court should find that the Mr. Wetzel EEOC filing is separate from his federal complaint. We find this fact inapposite to our analysis of when Mr. Wetzel's claim of age discrimination is said to have commenced.

[T]he basic purpose of the notice requirement ... is to provide the [Commission] with sufficient information so that it may notify prospective defendants and to provide the [Commission] with an opportunity to eliminate the alleged unlawful practices through informal methods of conciliation.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
(Cite as: 1999 WL 54563, *5 (E.D.Pa.))

Page    5

*Id.* (quoting H.R.Rep. No. 95-950 (1978), *reprinted in* 1978 U.S.C.C.A.N. 504, 534). The Defendant had notice from the EEOC that Mr. Wetzel had filed a complaint prior to its implementation of the CDRP. In addition, while the timing of the CDRP's implementation may have been just a coincidence, we cannot help but think that unfair practices could arise if employers were permitted to routinely implement mandatory arbitration policies in response to employee charges filed with the EEOC. The policy of favoring arbitration weighs against these concerns. We resolve this conflict, however, in favor of the Plaintiff in view of the approach taken by the Third Circuit Court of Appeals in most employment cases. This approach zealously guards the rights of Plaintiffs in employment cases.

We conclude, therefore, that the commencement of the present action began with Mr. Wetzel's filing of a charge with the EEOC, thereby exempting his claim from the Defendant's CDRP. While the Defendant's CDRP appears to be an enforceable arbitration agreement, Mr. Wetzel's age discrimination claim cannot be subject to this mandatory arbitration. We deny Defendant's motion to compel arbitration and dismiss the complaint. An appropriate order follows.

### ORDER
AND NOW, this 29th day of January, 1999, upon consideration of Motion of Defendant Baldwin Hardware Corporation to Dismiss this Action and Compel Arbitration and accompanying papers filed on December 7, 1998, Motion of Plaintiff to Oppose Defendant Baldwin Hardware Corporation's Motion to Dismiss filed on January 6, 1999, and Reply Memorandum of Defendant Baldwin Hardware Corporation in Support of its Motion to Dismiss this Action and Compel Arbitration filed on January 25, 1999, it is hereby ORDERED that Defendant's Motion to Dismiss and Compel Arbitration is DENIED.

Not Reported in F.Supp.2d, 1999 WL 54563 (E.D.Pa.)

Motions, Pleadings and Filings (Back to top)

. 2:98cv03257 (Docket) (Jun. 24, 1998)

**END OF DOCUMENT**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2006, I electronically filed **THE COMPENDIUM TO DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO STAY THIS CIVIL ACTION PENDING SUBMISSION OF PLAINTIFF'S CLAIMS TO DEFENDANTS' DISPUTE RESOLUTION PROGRAM** with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following:

Stephen J. Neuberger, Esquire
Thomas S. Neuberger, P.A.
Two East 7th Street
Suite 302
Wilmington, DE 19801

DAVID E. BRAND (Bar I.D. #201)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE  19899-1328
TEL: 302-888-6514
EMAIL:  DEBrand@prickett.com

19851.1\302593v1